UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LOUIS DIMARIO,

    Plaintiff,

v.                                                     C.A. No. 09-058 ML

FLEXTRONICS AMERICA, LLC,

    Defendants.

## MEMORANDUM AND ORDER

This case comes before the Court as a breach of contract claim. Plaintiff seeks specific performance in the form of an order directing the Defendant to make the commission payments allegedly agreed upon in the parties' oral agreement. Defendant has now moved, per Fed. R. Civ. P. 56, for summary judgment on grounds that, under Rhode Island law, the contract was terminable at will, thereby absolving Defendant of any liability for non-payment of the commissions.

### I. Background

Plaintiff, Louis DiMario ("DiMario"), a Rhode Island resident, has been self-employed as a manufacturer's representative for nearly three decades. In this capacity, DiMario has developed a long-standing business relationship with Taco, Inc. ("Taco"), a Rhode Island corporation, for whom he scouts vendors. Generally, Taco communicates to DiMario its manufacturing needs, and DiMario then finds vendors that can supply Taco with the necessary products/components

1

for its manufacturing operation. Ultimately, DiMario finds the most compatible vendor and makes the introduction to Taco. If the companies are a match and enter into a supply agreement, the vendor pays DiMario a monthly commission which is based on a percentage of its sales to Taco.

In 2004, Taco informed DiMario that it required a vendor to supply it with printed circuit board assemblies. DiMario then contacted Solectron EMS Canada ("Solectron"), a Canadian electronics manufacturing company, and met with a Solectron representative. After DiMario satisfied himself that the companies were compatible, he introduced Taco and Solectron. DiMario then remained active in the negotiations between the parties and ultimately secured from Solectron, via an oral agreement, a 3% commission rate. Solectron and Taco established a supply arrangement, and, thereafter, Solectron began paying DiMario 3% monthly commissions on all of its sales to Taco.

DiMario remained in contact with both parties after the establishment of the supply agreement. DiMario viewed his role as a manufacturer's representative as "accommodat[ing] the needs of both parties." Pl.'s Dep. 45:8. DiMario would attend weekly meetings and then discuss the details separately with both companies afterwards. Pl.'s Dep. 47:5-19. DiMario generally describes the work of a manufacturer's representative as being a "liaison" who functions as an "on-site representative" in order to, among other things, facilitate "communication" between the parties. Pl.'s Dep. 34:10-21.

In 2007, Flextronics America, LLC ("Flextronics") acquired Solectron.[1] Flextronics

---

[1] For the sake of simplicity, references to the oral agreement between Solectron and DeMario will be stated as being between Flextronics and DeMario.

continued to supply Taco with circuit board assemblies, and, initially, Flextronics continued to pay commissions to DiMario. Flextronics, however, soon curtailed DiMario's on-site work. In November 2007, Flextronics informed DiMario that he would no longer be required to attend meetings. Flextronics continued to make commission payments until September 2008, at which point it notified DiMario that he would no longer continue to receive such payments.

DiMario brought a breach of contract claim against Flextronics alleging that the terms of the oral agreement mandate that he be paid a 3% commission on all circuit board assembly shipments to Taco. Flextronics argues that the commissions relate to services that have been terminated and that no payment is required where no work is performed. Flextronics now moves for summary judgment on grounds that the oral agreement was a personal services contract that was terminable at will under Rhode Island law.[2]

## II. Standard of Review

Summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution would affect the outcome of the suit . . . and the issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cianbro Corp. v. George H. Dean, Inc., 596 F.3d 10, 14 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). The facts are viewed in the light

---

[2] Both parties accept in their motion papers that Rhode Island law governs this issue. Where a choice of law argument is not raised in a motion for summary judgment it is deemed to have been waived for the purposes of that judgment. See Ortiz v. Gaston Cnty. Dyeing Mach. Co., 277 F.3d 594, 597 (1st Cir. 2002). Accordingly, Rhode Island law is applied.

most favorable to the nonmoving party. See id.

## III. Discussion

Flextronics contends that the oral contract was a personal services contract that was terminable at will.[3] Flextronics asserts that "a significant component of the agreement . . . [was] Plaintiff's ongoing and substantive role after the underlying business relationship was formed." Def.'s Mot. for Summ. J. 8.

DiMario's ongoing work was not insubstantial. DiMario was involved in weekly meetings; he coordinated several trips to the manufacturing facilities; and he communicated frequently with both parties. Flextronics categorizes these activities as involving "ongoing personal services . . . after the introduction of Taco to Flextronics" and argues that these activities were the essence of the agreement. Def.'s Mot. for Summ. J. 9. DiMario admittedly functioned in some capacity as a liaison between parties, helping to ensure a smooth relationship between Taco and Flextronics. See Pl.'s Dep. 47-49. Flextronics asserts that DiMario's own characterization of his work as a liaison, in combination with his attorney's statement that "for

---

[3] Flextronics argues on alternative grounds that even if the contract was not terminable at will, DiMario is not entitled to an award of damages for future commissions. Flextronics argues that speculative future damages are not permissible and that a plaintiff is only entitled to such future commissions as they become due. DiMario, however, clarifies in his Objection that he does not seek an award for future damages. Rather, DiMario states that he seeks "damages for lost commissions" and "specific performance of the contract between the parties thereafter." Pl.'s Obj. 15. Therefore, this Court does not construe DiMario's complaint as seeking future damages and, accordingly, does not reach the issue of the applicability of future damages under these circumstances.

4

lack of a better term, it's a personal services contract,"[4] demonstrate that DiMario had an ongoing contractual obligation to provide services. Rule 16 Conf. 5:8-9.

DiMario asserts that his services as a liaison were designed to ensure the ongoing arrangement between the parties but that the essence of the oral agreement was the introduction of the companies to each other. DiMario contends that the 3% commission relates to his role in introducing Taco and Flextronics and that the ongoing services he rendered were merely part of an effort to ensure that the companies maintained their relationship. DiMario characterized his job as creating a "relationship that's mutually beneficial" and providing an opportunity "to be considered for any and all new business." Pl.'s Dep. 34-35. According to DiMario, by developing an on-going working relationship with the companies he was simply better positioning himself for further work as a manufacturer's representative; i.e. matching vendors with manufacturers. Ultimately, DiMario claims that the 3% commission is due on all of Flextronics' sales to Taco irrespective of any ancillary liaison services.

It is a "firmly established rule in Rhode Island that a contract to render personal services to another for an indefinite term is terminable at the will of either party at any time for any reason or for no reason at all." Roy v. Woonsocket Inst. for Sav., 525 A.2d 915, 917 (R.I. 1987). "[W]hen the duration of a contract is uncertain, the contract is to be considered terminable at will." Payne v. K-D Mfg. Co., 520 A.2d 569, 573 (R.I. 1987). Flextronics argues that the agreement was ongoing and that there was no termination date, necessarily making the contract terminable at will.

---

[4] The Court does not rely on this statement made at the Rule 16 Conference because it is not "evidence" as contemplated by Fed. R. Civ. P. 56.

5

"[I]n Rhode Island the general rule is that employees . . . who are hired for an indefinite period with no contractual right to continued employment are at-will employees subject to discharge at any time . . . ." DelSignore v. Providence Journal Co., 691 A.2d 1050, 1052 n.5 (R.I. 1997). Yet, "the presumption that a hiring unaccompanied by an expression of time is at will can be rebutted by evidence that the parties intended that it would be a fixed period." Sch. Comm. of City of Providence v. Bd. of Regents for Ed., 112 R.I. 288, 292 (1973). In this case, summary judgment is not proper unless it is found, as a matter of law, that the oral agreement was a personal services contract that was silent as to the termination date. In the first instance, it is not clear from the record that the oral agreement was indeed a personal services contract.

The facts, taken in the light most favorable to DiMario, do not establish that the agreement was a personal services contract. Rhode Island courts have found that personal services contracts are those in which the services of a particular individual are "more agreeable and efficient" than the services of others and where the particular services rendered by that individual are "considered an essential part of the benefits" to be received. Parker v. Macomber, 17 R.I. 674 (1892). Personal services are generally those that are non-delegable because anything other than personal performance would be unsatisfactory. See Restatement (Second) of Contracts § 318 cmt. c (1981). Flextronics has made no showing that the agreement at issue is of the type that involves the unique characteristics of the person rendering the services. See id. § 367 cmt b (noting that personal services contracts involve unique attributes such as those of an actor, singer, or athlete).

DiMario attended most meetings between Flextronics and Taco. Pl.'s Dep. 81:2-4. At times, DiMario was even a de facto representative of Flextronics. Pl.'s Dep. 81:5-9. DiMario

made efforts to help Flextronics try to become "primary supplier" and to "increase the business from year to year to year." Pl.'s Dep. 35:15-16. DiMario made himself "available to work with engineers, materials acquisitions people, quality people, [and] accounts receivable." Pl.'s Dep. 34:15-17. There is nothing in the record that suggests, however, that DiMario was obligated or felt obligated, as a condition of the agreement, to provide such services. In his own words, this ongoing work enabled him to "be in a position to be considered for any and all new business that the vendor may . . . be qualified to make and sell." Pl.'s Dep. 34:22-24. Indeed, the better the relationship between the companies the more likely DiMario was to continue to receive commissions. Viewed in the light most favorable to the non-moving party, the record does not establish that the oral agreement itself was a contract for personal services.

As an additional matter, the record does not establish whether the oral agreement was subject to termination upon a specific event or whether it was entirely open-ended. DiMario argues that the contract terminates upon a specific event; i.e. the discontinuation of the supply agreement between Flextronics and Taco. Contracts that terminate upon the occurrence of specific events are not terminable at will. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 396 (D.R.I. 1998) (citing Payroll Express Corp. v. Aetna Cas. & Sur. Co., 659 F.2d 285, 291 (2d Cir. 1981)). A terminating event, however, must be something other than a breach of the affirmative commitment between parties. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 11 (1st Cir. 2000). The parties must have intended for the arrangement to remain in effect until the happening of the event. See id. Flextronics argues that the oral agreement related solely to DiMario's personal services and was silent as to the duration of those services.

The parties' course of dealings and the circumstances surrounding the formation of the oral agreement are relevant to determining the intent of the parties with regard to the duration of the contract. See Ross-Simmons., 217 F.3d at 12. In this case, however, Flextronics has not shown that the parties intended for the oral agreement to pertain only to personal services. DiMario, for his part, has shown evidence demonstrating a genuine dispute as to whether the oral contract was one for personal services and whether it was terminable upon a specific event.

### IV. Conclusion

There is little evidence in the record on which the Court can infer the intent of the parties and establish the contours of the oral agreement. Both parties make plausible claims as to the nature of the agreement but, for summary judgment purposes, there remains a genuine issue of material fact as to whether the agreement was one for personal services and for how long the parties intended the agreement to last. Fort this reason, Flextronics' motion for summary judgment must be, and it is, hereby DENIED.

SO ORDERED

*[signature]*

Mary M. Lisi
United States District Judge
December 14, 2010